# 18-0831-cv

## United States Court of Appeals

*for the*

## Second Circuit

ELIYA, INC., a New York Corporation,

*Plaintiff-Appellant,*

– v. –

STEVEN MADDEN, LTD., a Delaware Corporation,

*Defendant-Appellee,*

– and –

DOES 1-10, J & L, a Peoples Republic of China Company,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

DOUGLAS A. MIRO
AMSTER, ROTHSTEIN & EBENSTEIN LLP
*Attorneys for Defendant-Appellee*
90 Park Avenue, 21st Floor
New York, New York 10016
(212) 336-8000

# CORPORATE DISCLOSURE STATEMENT

Counsel for Defendant-Appellee Steven Madden, Ltd. certifies the following:

1.      The full name of every party or amicus represented by me is:

Steven Madden, Ltd.


2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A


3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.


4.      The names of all law firms and the partners or associates that appeared for any of the parties or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Douglas A. Miro and Holly A. Pekowsky of
Amster, Rothstein & Ebenstein LLP, current counsel for Defendant-Appellee Steven Madden, Ltd.

Alan Federbush, Ariel Samuel Peikes, and Stephen J. Quigley of
Ostrolenk Faber LLP, former counsel for Defendant-Appellee Steven Madden, Ltd.


Dated: July 5, 2018              */s/Douglas A. Miro*_____
                                Douglas A. Miro
                                AMSTER, ROTHSTEIN & EBENSTEIN LLP

679956.4

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

COUNTERSTATEMENT OF THE ISSUES............................................2

STATEMENT OF THE STANDARD OF REVIEW ...............................3

COUNTERSTATEMENT OF THE CASE................................................3

SUMMARY OF THE ARGUMENT ......................................................5

ARGUMENT .......................................................................................6

I.     The District Court Properly Applied the Standard for Granting a Motion
       Under Fed. R. Civ. P. 12(b) ............................................................6

II.    The District Court Correctly Held That Eliya Did Not Allege Protectable
       Trade Dress Rights .........................................................................8

       A.     Eliya Failed to Adequately Define Its Alleged Trade Dress..............12

       B.     Eliya Did Not Plausibly Allege Non-Functionality ...........................16

       C.     Eliya Failed to Plead Facts That Plausibly Show a Likelihood of
              Confusion .........................................................................25

III.   Eliya's Failure and Inability to Plead Protectable Trade Dress Also Supports
       Dismissal of Derivative State Claims...........................................31

CONCLUSION ...................................................................................33

679956.4

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adidas America, Inc. v. Skechers USA, Inc.*,
    149 F. Supp. 3d 1222 (D. Or. 2016) ............................................................23, 24

*Airwair International Ltd., v. Cels Enterprises, Inc. d/b/a Chinese
    Laundry*,
    Civil Action No. 13-cv-04312 (N.D. Cal.) *transferred* to
    Civil Action No. 14-cv-02771 (C.D. Cal. *dismissed* Nov. 19, 2014)................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................7, 29

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................7, 18, 29

*Bounds v. Pine*,
    593 F.3d 209 (2d Cir. 2010) ..................................................................................3

*Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*,
    834 F.2d 1142 (2d Cir. 1987) ............................................................................19

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ........................................................18, 31

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F. Supp. 3d 317 (E.D.N.Y. 2014) ....................................................16, 21, 27

*Carson Optical v. Prym Consumer U.S.*,
    No. 11-3677, 2013 U.S. Dist. LEXIS 42100 (E.D.N.Y. Mar. 25,
    2013) ............................................................................................................26, 27

*Casa Editrice Bonechi S.R.L. v. Irving Weisdorf & Co.*,
    No. 95-cv-4008, 1997 U.S. Dist. LEXIS 19221 (S.D.N.Y. Dec. 3,
    1997) ................................................................................................................11

*Chesley v. Union Carbide Corp.*,
    927 F.2d 60 (2d Cir. 1991) ..................................................................................3

ii

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
   696 F.3d 206 (2d Cir. 2012) .......................................................................passim

*Coach, Inc. v. We Care Trading Co.*,
   67 F. App'x 626 (2d Cir. 2002) ....................................................................21, 22

*Converse Inc. v. Autonomie Project, Inc.*,
   Civil Action No. 1:13-cv-12220
   (D. Mass. *dismissed* Jan. 15, 2014) ....................................................................23

*Cooper v. Parsky*,
   140 F.3d 433 (2d Cir. 1998) ................................................................................29

*Cumberland Packing Corp. v. Monsanto Co.*,
   32 F. Supp. 2d 561 (E.D.N.Y. 1999) ..................................................................30

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003)................................................................................................8

*EFS Marketing, Inc. v. Russ Berrie & Co., Inc.*,
   76 F.3d 487 (2d Cir. 1996) ................................................................................21

*Eliya, Inc. v. Kohl's Corp.*,
   No. CV 15-2123, 2016 U.S. Dist. LEXIS 22085 (E.D.N.Y. Feb.
   22, 2016) ..................................................................................................6, 17, 29

*Eliya, Inc. v. Kohl's Corp.*,
   No. CV 15-2123, 2016 U.S. Dist. LEXIS 30802 (E.D.N.Y. Mar. 9,
   2016) ..................................................................................................................5, 6

*ESPN, Inc. v. Quiksilver, Inc.*,
   586 F. Supp. 2d 219 (S.D.N.Y. 2008) ..........................................................29, 30

*Estee Lauder, Inc. v. Gap, Inc.*,
   108 F.3d 1503 (2d Cir. 1997) ............................................................................25

*Fabrication Enters., Inc. v. Hygienic Corp.*,
   64 F.3d 53 (2d Cir. 1995) ....................................................................................8

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
   111 F.3d 993 (2d Cir. 1997) ..............................................................................31

iii

*Gucci Am., Inc. v. Guess?, Inc.*,
  868 F. Supp. 2d 207 (S.D.N.Y. 2012) ................................................................24

*ID7D Co. v. Sears Holding Corp.*,
  No. 11-1054, 2012 U.S. Dist. LEXIS 52320 (D. Conn. Apr. 13,
  2012) ...........................................................................................................17, 24

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1983)...........................................................................................21

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995) ...............................................................................9, 12

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
  113 F.3d 373 (2d Cir. 1997) .....................................................................passim

*Montblanc-Simplo GmbH v. Colibri Corp*,
  692 F. Supp. 2d 245 ......................................................................................28, 30

*Nat'l Lighting Co. v. Bridge Metal Indus., LLC*,
  601 F. Supp. 2d 556 (S.D.N.Y. 2009) ...............................................................15

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
  269 F.3d 114 (2d Cir. 2001) ............................................................................8, 9

*Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*,
  136 F.3d 273 (2d Cir. 1998) .................................................................................3

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961) ..............................................................................25

*Qualitex Co. v. Jacobson Prod. Co.*,
  514 U.S. 159 (1995)......................................................................................16, 20

*R.F.M.A.S., Inc. v. Mimi So*,
  619 F. Supp. 2d 39 (S.D.N.Y. 2009) .................................................................14

*Sherwood 48 Assocs. v. Sony Corp. of Am.*,
  76 F. Appx. 389 (2d Cir. 2003) .........................................................................11

*Shevy Custom Wigs, Inc. v. Aggie Wigs*,
  No. 06-1657, 2006 U.S. Dist. LEXIS 83495 (E.D.N.Y. Nov. 17,
  2006) ..................................................................................................................15

iv

*Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II v. Shoe Confession
LLC, et al,*
Civil Action No. 13-cv-07573 (C.D. Cal. *dismissed* July 24, 2014)..................23

*Tracey Tooker v. Whitworth,*
212 F. Supp. 3d 429 (S.D.N.Y. 2016) ................................................................15

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
532 U.S. 23 (2001)...........................................................................9, 11, 20, 21

*Vedder Software Group Ltd. v. Ins. Servs. Office,*
545 F. App'x 30 (2d Cir. 2013) .........................................................................26

*Waddington N. Am. Bus. Tr. v. EMI Plastics, Inc.,*
No. 02-CV-3781, 2002 U.S. Dist. LEXIS 16634 (E.D.N.Y. Sept. 5,
2002) ...................................................................................................................18

*Wal-Mart Stores, Inc. v. Samara Bros.,*
529 U.S. 205 (2000).....................................................................................8, 20

*Yurman Design, Inc. v. PAJ, Inc.,*
262 F.3d 101 (2d Cir. 2001) .............................................................................11

STATUTES

15 U.S.C. § 1125 ..............................................................................2, 5, 8, 16, 30

28 U.S.C. § 1332 ...........................................................................................2, 32

RULES

Fed. R. Civ. P. 12(b) .................................................................................passim

OTHER AUTHORITIES

1 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §
7:72 (2017).........................................................................................................24

3 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §
23:2 (1996).........................................................................................................25

## **INTRODUCTION**

This Court should affirm the district court's dismissal of the First Amended Complaint ("FAC"). Appellant Eliya, Inc.'s ("Eliya") opening brief sets forth no factual or legal basis upon which to overturn any of the three alternative grounds for dismissal of the meritless FAC: (1) the FAC "fails to set forth with specificity the nature and scope of the claimed trade dress"; (2) "no specific facts are plead that plausibly support the non-functionality of the claimed trade dress"; and (3) the FAC "fail[s] to adequately plead facts that plausibly assert a likelihood of confusion." (SPA-6-8.) [1]

The FAC was Eliya's ***fourth*** unsuccessful attempt to allege specific trade dress claims against Appellee Steven Madden, Ltd.'s ("Madden") shoe products. Eliya's allegations were based solely on unregistered trade dress rights. The United States Patent and Trademark Office ("USPTO") refused to register two of the three product designs that were the subject of the FAC,[2] and there is no evidence that Eliya ever attempted to register the third product design.[3] Eliya tried to fabricate cognizable legal claims where none existed solely to stifle legitimate competition in the marketplace.

---

[1] The special appendix will be cited as "SPA-__".
[2] *See* U.S. Trademark Application Serial Nos. 86/135,843; 86/135,216; 86/135,829; and 86/135,157. (A-209-216.)
[3] Eliya also has no copyright or patent rights covering any of its shoes.

It is well-established in the Second Circuit that "particular caution" is required when, where as here, a party seeks to extend trade dress protection to unregistered product designs, because such trade dress claims raise a potent risk that relief will impermissibly afford a level of protection that would "hamper efforts to market competitive goods." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379 (2d Cir. 1997). In dismissing the FAC, the district court properly recognized that Eliya sought to impermissibly hamper competition. This Court should do the same by affirming the district court's decision.

## JURISDICTIONAL STATEMENT

Madden agrees with Eliya's jurisdictional statement, except as to point (ii). (Br. 1.)[4] The district court did not have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (*i.e.*, diversity jurisdiction) because Madden and Eliya are citizens of the same state, New York. (*See* FAC ¶¶ 1-2; A-1303.)[5]

## COUNTERSTATEMENT OF THE ISSUES

Whether the district court correctly determined that the FAC does not state a claim upon which relief may be granted, where Eliya failed to plausibly allege protectable trade dress rights or infringement under the Lanham Act?

---

[4] Eliya's opening brief will be cited as "Br. __".
[5] The joint appendix will be cited as "A-__".

679956.4

## STATEMENT OF THE STANDARD OF REVIEW

Appellate review of a decision granting a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is undertaken *de novo*. *See Bounds v. Pine*, 593 F.3d 209, 214 (2d Cir. 2010). "It is well settled that '[the Court of Appeals] may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court.'" *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998) (citing *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir. 1991)).

## COUNTERSTATEMENT OF THE CASE

Eliya filed its original complaint on or about March 11, 2015 alleging infringement by Madden of unregistered product design trade dresses in each of four specific shoes and in an additional "line" of shoes. (A-11, *et seq*.) Several months later, in August 2015, Eliya's counsel provided Madden with a draft of an amended complaint in which Eliya proposed the addition of another claim for trade dress protection based on the "overall look" of another entire line of Eliya's shoes. (A-101-116.)

On October 6, 2015, Eliya filed a motion to amend the complaint that included yet another draft version of its claims, which again changed the asserted

trade dress rights (adding at least two more unregistered product designs).  (A-128, *et seq*.)  After the motion to amend was granted, on March 31, 2016, Eliya filed an amended complaint that significantly differed from the draft submitted with its motion to amend.  (A-267-290.)  Due to these changes from the draft previously submitted to the court, further motion practice ensued, and the district court ultimately granted Eliya leave to file what became its First Amended Complaint. In the FAC, filed on April 5, 2017, Eliya pared down its trade dress claims to include just three shoe designs—the Lulia, the Comfi and the Catwalk.  (A-1303-1326.)

Despite Eliya's numerous attempts to craft cognizable claims, the FAC remained deficient.  On June 19, 2017, Madden filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the FAC based on the following grounds:

(1)     Eliya's failure to define the character and scope of its purported trade dresses;

(2)     Eliya's failure to rebut the statutory presumption that its trade dresses are functional; and

(3)     Eliya's failure to plead facts sufficient to assert a claim for likelihood of confusion.

(A-1337, *et seq.*)

Eliya opposed Madden's motion.  The motion was referred to Magistrate Judge Locke, who issued a Report and Recommendation on January 11, 2018 (the "R&R") that the FAC should be dismissed with prejudice based upon each of the

4

three grounds asserted by Madden. (A-1529-1553.) Eliya filed objections to the

R&R, which Madden opposed. On February 22, 2018, the district court adopted

the R&R in its entirety and dismissed the FAC based on each of the three grounds

asserted by Madden. (SPA-1-8.) Eliya filed its Notice of Appeal on March 26,

2018. (*Id.* at 9.)

## SUMMARY OF THE ARGUMENT

Madden submits that the district court's dismissal with prejudice of Eliya's

FAC was based upon a correct interpretation of the Lanham Act, as applied in this

Circuit. This is because, ***first***, Eliya has not, and cannot, plausibly allege

protectable trade dress in its shoes. ***Second***, Eliya has not, and cannot, establish

the requisite elements of distinctiveness and non-functionality to substantiate its

claims. ***Finally***, Eliya has not, and cannot, adequately plead facts that plausibly

assert a likelihood of confusion. For these reasons, the district court's judgment

dismissing the action with prejudice should be affirmed in all respects.

Eliya's attempts to stifle fair competition have been unsuccessful. In

addition to the dismissal of the FAC in this case, the United States District Court

for the Eastern District of New York dismissed a similar trade dress infringement

action commenced by Eliya against Kohl's Corporation. *See Eliya, Inc. v. Kohl's

Corp.*, No. CV 15-2123, 2016 U.S. Dist. LEXIS 30802, at *1 (E.D.N.Y. Mar. 9,

2016).

Eliya's claims in both cases were almost identical, alleging the same trade dress.  The report and recommendation adopted by the *Kohl's* court stated that plaintiff "fails to offer a precise expression of the character and scope of the 'specific features' in which plaintiff claims a trade dress" because "[n]othing in the complaint suggests exactly how these features are distinctive."  *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123, 2016 U.S. Dist. LEXIS 22085, at *13-14 (E.D.N.Y. Feb. 22, 2016).  It also held that the "sweeping description of the shoes -- such as 'mary jane strap,' 'woven pattern,' 'waved notches,' 'panels of the weave,' and 'triangular cut out shape' -- denote categories of features, not the features themselves."  *Id.*[6]

The district court in this case took note of the *Kohl's* decision when granting Madden's motion to dismiss the FAC.  (*See, e.g.,* R&R at A-1537-1538.)  It is clear from both cases that Eliya has not, and cannot, allege protectable trade dress for its shoes.

## **ARGUMENT**

**I.    The District Court Properly Applied the Standard for Granting a Motion Under Fed. R. Civ. P. 12(b)**

A claim may be dismissed upon motion under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

---

[6] The parties subsequently settled the *Kohl's* action, and the district court's decision dismissing that case was not appealed.

motion to dismiss under Rule 12(b)(6) should be granted if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, a court cannot conclude that the plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The allegations that are entitled to the presumption of truth are those that are factual, rather than mere legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do."  *Id.* at 678.

Eliya does not dispute that the district court correctly articulated the legal standard for a motion to dismiss, but argues that the district court misapplied the standard.  (Br. 19.)  Eliya is wrong.  The district court based its decision on three separate grounds.  *First*, Eliya "failed to sufficiently describe the character and scope of its claimed trade dress."  (R&R at A-1541; SPA-6.)  *Second*, Eliya "fail[ed] to adequately plead that the features at issue are non-functional."  (R&R at A-1545; SPA-7.)  *Third*, Eliya did not plead "facts that plausibly show a likelihood of confusion."  (R&R at A-1549; SPA-7-8.)  As discussed below, the district court correctly applied the standard for granting a motion to dismiss.  Eliya's insufficient, conclusory allegations in the FAC warranted dismissal on each

of these three grounds, particularly in view of the high pleading threshold for

asserting trade dress infringement of a product design in the Second Circuit.

## II. The District Court Correctly Held That Eliya Did Not Allege Protectable Trade Dress Rights

"The principal purpose of federal trademark law is to 'secure the public's

interest in protection against deceit as to the sources of its purchases, [and] the

businessman's right to enjoy business earned through investment in the good will

and reputation attached to a trade name.'" *Christian Louboutin S.A. v. Yves Saint*

*Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quoting *Fabrication*

*Enters., Inc. v. Hygienic Corp.*, 64 F.3d 53, 57 (2d Cir. 1995)) (internal quotation

marks omitted) (alteration in original). The Lanham Act "was intended to make

'actionable the deceptive and misleading use of marks,' and 'to protect persons

engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth*

*Century Fox Film Corp.*, 539 U.S. 23, 28 (2003). However, "the Lanham Act must

be construed in the light of a strong federal policy in favor of vigorously

competitive markets[.]" *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269

F.3d 114, 119 (2d Cir. 2001) (citing *Landscape Forms, Inc.,* 113 F.3d at 379).

Section 43(a) of the Lanham Act protects a product's "trade dress—a

category that originally included only the packaging, or 'dressing,' of a product.

But in recent years, Section 43(a) has been expanded by many courts of appeals to

encompass the design of a product." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529

8

U.S. 205, 209 (2000). According to the Supreme Court, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products[;]" and, "[i]n general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Nora Beverages, Inc.*, 269 F.3d at 119 (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)); *see also, Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) (holding "[the] overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas[;]" and, "[c]onsequently, courts should proceed with caution in assessing claims to unregistered trade dress protection so as not to undermine the objectives of these other laws.").

In the FAC, Eliya alleged trade dress infringement of three shoes designs: the Lulia, the Comfi and the Catwalk. (FAC ¶¶ 12, 15, 18, A-1306-1309.) Eliya described the Lulia trade dress as an aggregate of the following features:

(i) Approximately ¼ inch multi-color or multi-shaded wide straps that form a woven distinctive alternating pattern on the upper portion of the shoe[;]

(ii) A closed toe with an angular shape on top of the front portion of the shoe[;]

(iii) A mary jane strap;

9

(iv)    An appendage on the heel that extends higher than the weave portion and includes cutouts though [sic] which the weave can be seen;

(v)    Horizontal grooves on the sole portion; and

(vi)    The sole portion having weaved notches extending up from the bottom of the sole.

(FAC ¶ 12, A-1306.)  Eliya similarly described the purported trade dresses for the Comfi and Catwalk shoe designs.[7]

Eliya's allegations were deficient as a matter of law.  To plead a claim of trade dress infringement for an unregistered product design, the plaintiff must

---

[7]    Eliya described the Comfi trade dress as an aggregate of the following features:
(i)    Approximately ¼ inch multi-color or multi-shaded wide straps that form a woven distinctive alternating pattern on the upper portion of the shoe[;]
(ii)    A mary jane strap;
(iii)    An appendage on the heel that extends higher than the weave portion and includes cutouts though [sic] which the weave can be seen;
(iv)    An open toe with an angular cut out shape;
(v)    An angular-like shape on the top front portion of the shoe; and
(vi)    Vertical grooves on the sole portion.
(FAC ¶ 15, A-1307.)

Eliya described the Catwalk trade dress as an aggregate of the following features:
(i)    Approximately ¼ inch multi-color or multi-shaded wide straps that form a woven distinctive alternating pattern on the upper portion of the shoe[;]
(ii)    An appendage on the heel that extends higher than the weave portion and includes cutouts though [sic] which the weave can be seen;
(iii)    A closed toe with an angular shape on the top front portion of the shoe; and
(iv)    A flat sole.
(FAC ¶ 18, A-1308-1309.)

allege: (1) "a precise expression of the character and scope of the claimed trade dress;" (2) facts that demonstrate that "the claimed trade dress is non-functional;" (3) facts that demonstrate that "the claimed trade dress has secondary meaning;"[8] and (4) facts that demonstrate that "there is a likelihood of confusion between the plaintiff's goods and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. Appx. 389, 391 (2d Cir. 2003) (quoting *Landscape Forms, Inc.*, 113 F.3d at 380 ("granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves[;]" and "[f]or this reason, courts have exercised particular 'caution' when extending protection to product designs") and citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114, 116 (2d Cir. 2001) (the Second Circuit "exercise[s] 'particular caution' when extending protection to product designs[;]" because "trade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market

---

[8]    Failure to adequately allege secondary meaning was not a basis for Madden's motion to dismiss the FAC, and it did not constitute a basis for the district court's decision. Eliya's discussions regarding secondary meaning and acquired distinctiveness (*e.g.*, Br. 26-27, 39-41) are irrelevant to this appeal, so Madden does not address this issue in this brief except to say that the issue of secondary meaning is inapposite. There can be no secondary meaning when there is no protectable trade dress. *See, e.g.*, *TrafFix Devices*, 532 U.S. at 33 (holding that "secondary meaning need not be considered" where the product at issue was found to be functional and not protectable trade dress); *Casa Editrice Bonechi S.R.L. v. Irving Weisdorf & Co.*, No. 95-cv-4008, 1997 U.S. Dist. LEXIS 19221, at *14 (S.D.N.Y. Dec. 3, 1997) (holding that where there is no "protectable trade dress as a matter of law . . . proof of secondary meaning . . . cannot render it protectable).

competitive goods") (citation omitted)); *see also Jeffrey Milstein*, 58 F.3d at 32 ("[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance.").

The district court determined that Eliya failed to satisfy three of the required elements for stating a claim of trade dress infringement for an unregistered product design, thereby warranting dismissal of the FAC based on any of the three grounds. As discussed below, the court's determination was fully supported by the facts and the law.

### A.     Eliya Failed to Adequately Define Its Alleged Trade Dress

The first alternative basis for the district court's dismissal of the FAC was that Eliya did not adequately define the alleged trade dress.  The district court correctly held that Eliya failed to meet the strict pleading requirements for asserting trade dress infringement of a product design because the "FAC fails to contain a precise expression of the character and scope of the claimed trade dress." (SPA-5.)  A precise delineation of the trade dress is essential because "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, *i.e.*, the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms, Inc.*, 113 F.3d at 381.

12

Here, Eliya asserts that it "explicitly identifies the elements of its trade dress in the FAC and provides drawings and photographs to further communicate the claimed features . . . ." (Br. 33.) However, the district court correctly characterized Eliya's purported trade dress elements as denoting ***general categories*** of shoe features rather than distinctive features. (R&R at A-1542.)

The court further recognized that Eliya's "description is akin to a laundry list of the elements that constitute a shoe's features." (SPA-5.) For example, the elements of Eliya's purported trade dress, such as the "mary jane strap," "woven pattern," "waved notches," "triangular cut out shape," "closed or open toe," "flat heel," "vertical" and "horizontal grooves on the sole" all denote generic categories of a shoe's features. (R&R at A-1543; SPA-5.) Absent from the FAC are precise descriptions of how these elements are distinctive.

Eliya's arguments only highlight this deficiency. Specifically, Eliya provides bullet points of three shoe elements that are allegedly "distinctive": (1) an "appendage on the heel" of all of its shoes; (2) "horizontal grooves and weaved notches" on the soles of the Lulia Shoe; and (3) "an angular-like shape on the top front portion" and "vertical grooves on the sole portion" of the Comfi Shoe. (Br. 33-34.) But merely asserting that an element is "distinctive" does not make it so, and Eliya's conclusory assertions cannot support a cognizable claim. (R&R at A-1543.) For example, the district court recognized that, "[a]bsent are precise

13

descriptions of the 'angular shape' and how the vertical or horizontal grooves on its shoes are distinctive." (SPA-5); *see also R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 77 (S.D.N.Y. 2009) ("plaintiff must provide a sufficiently specific articulation of the . . . trade dress rather than sweeping, overly general descriptions that essentially corner the market on an idea."). Despite numerous opportunities, Eliya is unable to articulate "how" the recited elements are purportedly distinctive.

Contrary to Eliya's contentions, the district court did not limit its analysis to each individual feature alleged by Eliya. In reaching its decision, the district court recognized that trade dress may protect the "overall look of a product," and that a "combination of elements may be indicative of source" even though "each element of a trade dress individually might not be inherently distinctive." (SPA 4-5 (quoting *Landscape Forms, Inc.*, 113 F.3d at 381 (internal quotation marks and citations omitted)).) Nevertheless, the district court correctly concluded that, both individually and in the aggregate, the features that comprise the purported trade dresses of the three shoes are "too broad to form a concrete expression of an idea." (R&R at A-1544.)

Eliya now asserts that "whether or not such features when viewed in combination are 'too broad' is a question of fact that . . . should not be resolved on a motion to dismiss." (Br. 23.) Eliya misses the point. Eliya cannot simply slap a list of product features together, call the agglomeration a protectable trade dress,

and demand a trial. Rather, it was required to articulate ***how*** the features of its purported trade dress are supposedly distinctive. (R&R at A-1541 (citing *Shevy Custom Wigs, Inc. v. Aggie Wig*s, No. 06-1657, 2006 U.S. Dist. LEXIS 83495, at *15 (E.D.N.Y. Nov. 17, 2006); SPA-5 (citing *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009); *Tracey Tooker v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016)).) "Sweeping descriptions" which "denote ***categories*** of features, not the features themselves" are insufficient to describe protectable trade dress. (R&R at A-1543-1544 (emphasis added).)

As the Second Circuit made clear over twenty years ago:

> ***[F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress.*** Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection.

*Landscape Forms*, 113 F.3d at 381 (emphasis added). Neither the FAC nor Eliya's three prior complaints articulated the specific elements of the overall look of Eliya's products that comprise the purported trade dress. Eliya merely offered sweeping descriptions of generic categories of shoe features.

The district court's conclusion that Eliya's trade dress claims should be dismissed for failure to define the character and scope of its purported trade dress is well supported by the facts and relevant case law.

15

## B.    Eliya Did Not Plausibly Allege Non-Functionality

The second alternative basis for the district court's dismissal of the FAC was that Eliya did not adequately plead that the purported trade dress features are non-functional.  (SPA-7; R&R at A-1548.)  The district court correctly held that Eliya failed to allege sufficient facts to support its conclusory allegations of non-functionality.  (R&R at A-1547.)

The functionality doctrine prevents trademark law from inhibiting legitimate competition by allowing a producer to control a useful product feature.  *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995).  In an action for infringement of an unregistered trade dress, the plaintiff therefore "has the burden of proving that the matter sought to be protected is not functional."  (R&R at A-1545 (citing 15 U.S.C. § 1125); SPA-6 (quoting *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 340 (E.D.N.Y. 2014) ("There is a 'statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection[.]'") (citation omitted)).)  A plaintiff's conclusory allegation that its trade dress is non-functional cannot rebut this statutory presumption.  *Carson Optical, Inc.*, 11 F. Supp. 3d at 340.

The Second Circuit has identified two types of functionality: (i) "traditional" or "utilitarian" functionality; and (ii) "aesthetic" functionality.  *Christian Louboutin S.A.*, 696 F.3d at 219.  "[A] product feature is considered to be

functional in a utilitarian sense if it is . . . essential to the use or purpose of the article, or if it . . . affects the cost or quality of the article." *Id.* (citations and internal quotation marks omitted). A feature can also be aesthetically functional "if giving the markholder the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *Id.* at 220 (citation and internal quotation marks omitted).

A plaintiff must plead non-functionality with particularity. *See ID7D Co. v. Sears Holding Corp.*, No. 11-1054, 2012 U.S. Dist. LEXIS 52320, at *20 (D. Conn. Apr. 13, 2012). In this case, the district court correctly concluded that the allegations in the FAC pertaining to non-functionality were conclusory and, therefore, failed to rebut the statutory presumption of functionality. (R&R at A-1546.)

Indeed, the district court correctly held that Eliya's trade dress is functional under ***both*** Second Circuit tests, *i.e.*, (i) the trade dress is utilitarian because "common sense and experience suggest that elements [of Eliya's purported trade dress] such as the strap, the raised heel appendage, and the woven upper are the features of the shoes that would help the user put them on and keep them on." (SPA-7; R&R at A-1546 (quoting *Kohl's*, 2016 U.S. Dist. LEXIS 22085, at *7)); and (ii) the trade dress is aesthetically functional because even those features of the trade dress which are ornamental "serve to enhance the aesthetic appeal of the

17

shoes, rather than to identify [their] source . . ." (SPA-7 (quoting *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 595 (E.D.N.Y. 2017)); R&R at A-1547 (quoting *Waddington N. Am. Bus. Tr. v. EMI Plastics, Inc*., No. 02-CV-3781, 2002 U.S. Dist. LEXIS 16634, at *4 (E.D.N.Y. Sept. 5, 2002)).) The district court held that giving Eliya the right to exclusively use the combination of features of the shoes in this case would put Eliya's competitors at a significant, non-reputation-related disadvantage. (R&R at A-1547.)

Eliya now argues that the allegations in the FAC, particularly those in Paragraph 21, raise its allegations of non-functionality above "the speculative level" and are "plausible on its face." (Br. 26 (quoting *Twombly*, 550 U.S. at 555, 570).) Eliya cites extensively to this paragraph to support its allegations of non-functionality. (Br. 11-15.)

However, the district court correctly found that, in substance, Paragraph 21 (which was added for the first time to the FAC) added nothing new to Eliya's deficient allegations of non-functionality. (R&R at A-1547.) Instead they were "merely reformulat[ions of] its conclusory assertions," which do not explain how the shoe features are non-functional. (*Id.*) Specifically, the district court pointed out that the new paragraph merely stated, with respect to each trade dress, that "there is no utilitarian advantage to [the features at issue]" and that "such assertions, absent additional factual support, are plainly inadequate." (*Id.*)

18

Furthermore, the district court held that Eliya's inclusion in the FAC of charts allegedly depicting examples of feature alternatives fails to remedy the pleading deficiencies.  (*Id.* (citing *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987)).)

Eliya argues that the FAC "provides examples of images of alternative shoe designs that prove the claimed features are not essential to the use or purpose of the articles."  (Br. 25 (citing FAC ¶ 21(i)-(vi), A-273-279).)  However, the district court correctly found that the purported alternative constructions "in fact denote entirely different categories of shoe features and, hence, do not perform the same functions."  (R&R at A-1548.)  For example, "rather than show an alternative to the 'distinctive alternating pattern' it claims for its woven upper," Eliya offered a set of footwear products that had no weave at all.  (R&R at A-1548 (quoting Def.'s Br. A-1522-1523).)

For all of these reasons, Eliya failed to adequately plead non-functionality, and the district court found that the alleged trade dress is functional under both functionality tests of this Circuit.  (R&R at A-1547-1548.)  Desperate to avoid an affirmance, Eliya misstates the legal standard for functionality in its brief.  Without citing Second Circuit authority, Eliya states that trade dress is functional if it is either *de jure* functional (meaning "the product performs the function it was

intended to perform") or *de facto* functional (meaning "competitors must use the trade dress to compete effectively").  (Br. 24.)

The *de jure/de facto* standard is not the standard in the Second Circuit, nor is it recognized by the Supreme Court.  *See, e.g.*, *TrafFix Devices, Inc.*, 532 U.S. at 28-29; *Wal-Mart Stores, Inc.,* 529 U.S. at 213-14; and *Qualitex Co.* 514 U.S. at 169-70.  Rather, as stated above and as the district court recognized, under Second Circuit law the court must assess whether a product has either (i) "traditional" or "utilitarian" functionality (meaning the trade dress is essential to the use or purpose of the product, or affects the cost or quality of the product) or (ii) "aesthetic" functionality (meaning the trade dress serves to enhance the aesthetic appeal rather than to identify the source).  *Christian Louboutin S.A.*, 696 F.3d at 219.

The utilitarian/aesthetic standard for functionality is significantly different from Eliya's *de facto/de jure* standard.  In particular, the *de facto/de jure* standard is much narrower than the utilitarian/aesthetic two-prong test.  The utilitarian test encompasses both *de facto* and *de jure* criteria and, as noted above, the Second Circuit also separately requires that the trade dress not be aesthetically functional. The Second Circuit's more rigorous standard is consistent with the "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection," *TrafFix Devices v. Mktg. Displays*, 532 U.S. at 30, as well as the fact that "[consumers] are more likely to be attracted to the

20

product for the product's features, rather than for the source-identifying role the features play." *EFS Marketing, Inc. v. Russ Berrie & Co., Inc.*, 76 F.3d 487, 491 (2d Cir. 1996).

In the subsequent "Argument" section of its brief, Eliya appears to abandon its *de jure/de facto* analysis in favor of a "traditional" test (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 (1983)) and a "competitive" test (citing *TrafFix*) of functionality. (Br. 35.) These are also not the tests in the Second Circuit. *See, e.g., Christian Louboutin S.A.*, 696 F.3d at 219 (discussed *supra*).

Furthermore, apart from misstating the test for functionality in this Circuit, Eliya fails to acknowledge or consider the statutory presumption that a product's features are deemed functional until proved otherwise. *See, e.g., Carson Optical, Inc.*, 11 F. Supp. 3d at 340 (quoting *TrafFix Devices, Inc.*, 532 U.S. at 30). Eliya does not address the statutory presumption, and the district court rightly held that Eliya's conclusory allegations of non-functionality did not overcome the presumption. (R&R at A-1546.)

Eliya also cites *Coach, Inc. v. We Care Trading Co.*, 67 F. App'x 626, 628 (2d Cir. 2002) in support of its non-functionality argument. (Br. 37-38.) Specifically, Eliya asserts that, in *Coach*, the recited trade dress included "the type of material used and how the [product] is constructed," which "have bearing on how the product 'functions'." (*Id.*) Eliya puts the cart before the horse. In *Coach*,

this Court affirmed the ***jury verdict*** of non-functionality because the plaintiff demonstrated that "the combination of elements it claims as its trade dress is not essential to the use or purpose of handbags." *Coach, Inc.*, 67 F. App'x at 629. Here, Eliya failed to allege sufficient facts to move past the pleadings stage. As discussed above, the features that supposedly comprise Eliya's trade dress are simply too broad to form a concrete expression of an idea. Eliya's reliance on *Coach* is therefore unavailing. *See id.* at 629 (finding that the plaintiff's "description of the combination of elements does not describe 'a style, theme, or idea.'").

In what purports to be further support of its *Coach* analysis, Eliya adds a footnote citing dozens of cases, the majority of which do not address the sufficiency of pleadings and have no relevance whatsoever to the issues at hand. (Br. 38-39 n.7.) Those that do address relevant issues do not support any of Eliya's arguments. The only conceivable reason that Eliya cites most cases is that they involve shoes and trade dress.

For example and as recognized by Eliya, the International Trade Commission case referred to as the "Converse Matter" in footnote 7 (Br. 38-39 n.7) concerned federally registered trade dress—unlike the trade dress here which was repeatedly rejected by the trademark office. (A-1413 (Eliya noted that "weighing heavily in favor of the Administrative Law Judge's ('ALJ') Initial

22

Determination that the midsole design was protectable *was the fact that Converse had a federal trademark registration* for a combination of elements that made up its claimed 'midsole design'" (emphasis added)).)

Eliya cites another Converse matter in footnote 7, *Converse Inc. v. Autonomie Project, Inc.*, Civil Action No. 1:13-cv-12220 (D. Mass.).  As Eliya acknowledges (A-1413), that case was resolved by the parties entering into a consent judgment, for which a joint motion was filed.  (A-1440-1443.)

Another example cited in footnote 7 is *Airwair International Ltd., v. Cels Enterprises, Inc. d/b/a Chinese Laundry,* Civil Action No. 13-cv-04312 (N.D. Cal.).  But that case was dismissed after being transferred to the Central District of California, without addressing the trade dress at issue.  Likewise, *Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II v. Shoe Confession LLC, et al,* Civil Action No. 13-cv-07573 (C.D. Cal.), cited in footnote 7, was dismissed based on settlement without development of the trade dress issue.

Other cases to which Eliya cites in footnote 7 are also distinguishable.  For example, in *Adidas America, Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222 (D. Or. 2016), the court found that the trade dress at issue was non-functional because "[t]here is *no utilitarian advantage* gained from using the Stan Smith's particular set of features because they do not make the shoe work better or cost less than other similar sneakers in the current marketplace."  *Id*. at 1238 (emphasis added).

23

*Adidas* is distinguishable because the shoe features identified by Eliya do provide a utilitarian advantage. As the district court recognized, Eliya pleaded "no specific facts . . . that plausibly support the non-functionality of the claimed trade dress." (SPA-7.) In particular, the district court recognized that "features such as the strap, the raised heel appendage and woven uppers are functional in that such features help the user put them on and keep them on; similarly, grooved soles provide traction for the wearer." (*Id.*) *See also, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207 (S.D.N.Y. 2012) (Gucci's "Diamond Motif Trade Dress," which was a repeating GG pattern with a pair of inverted Gs rendered in a brown/beige color combination, was not essential to the use or purpose of products on which such elements appeared and therefore was not functional).

Finally, Eliya also briefly argues that "functionality . . . is a question of fact that must be determined by the trier of fact." (Br. 25.) This is incorrect—it is not uncommon for deficient trade dress claims to be dismissed at the pleading stage for failing to adequately plead non-functionality. *See ID7D Co.* 2012 U.S. Dist. LEXIS 52320, at *20 (D. Conn. Apr. 13, 2012) (A plaintiff must "plead non-functionality with factual particularity."); 1 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:72 (2017) ("In pleading a Complaint alleging infringement of a non-registered mark, the plaintiff's mere conclusory

24

assertion that a product design is not functional is not sufficient to withstand a Rule 12(b)(6) motion to dismiss") (citations omitted).

In sum, the district court's conclusion that Eliya did not adequately allege non-functionality is well-supported by the facts and the law.

### C. Eliya Failed to Plead Facts That Plausibly Show a Likelihood of Confusion

The third alternative basis for the district court's dismissal of the FAC was that Eliya's allegations of likelihood of confusion were factually insufficient to support a claim for infringement. (SPA-7-8; R&R at A-1549-1551.)

To assess likelihood of confusion, courts in the Second Circuit apply the *Polaroid* factors: (1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group. *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961).

In the Second Circuit, there must be "a probability of confusion, it is not sufficient if confusion is merely possible." *Estee Lauder, Inc. v. Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir. 1997) (quoting 3 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:2, at 23-10 to -11 (1996)).

25

"Bare assertions [that] amount to nothing more than a formulaic recitation of the elements of a trademark infringement claim . . . are conclusory and not entitled to be assumed true." *Vedder Software Group Ltd. v. Ins. Servs. Office*, 545 Fed. Appx. 30, 33 (2d Cir. 2013) (dismissing as conclusory the allegation that "defendants' conduct is likely to cause confusion or mistake regarding the affiliation of [the respective products]" (internal quotations omitted)).

Notably, in *Carson Optical v. Prym Consumer, U.S.*, No. 11-3677, 2013 U.S. Dist. LEXIS 42100 (E.D.N.Y. Mar. 25, 2013), which, like the instant case, involved a claim for trade dress infringement of a product design, the Eastern District of New York held that the following pleadings were "naked assertions devoid of factual enhancement, [citation omitted] and as such do not allow the Court to draw the reasonable inference that there is a likelihood of confusion." *Id.*, 2013 U.S. Dist. LEXIS 42100, at *44-45:

> Prym's copying of the ornamental design and overall appearance of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion . . . as to the affiliation, connection or association of the products with Carson, or as to the origin, sponsorship or approval of the products by Carson; and [defendant's] marketing, offering for sale and sale of a product that copied the ornamental design and overall appearance of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion . . . as to the affiliation, connection or association of the products with Carson, or as to the origin, sponsorship or approval of the products by Carson.

*Id.*, 2013 U.S. Dist. LEXIS 42100, at *44 (quoting portions of the pleadings) (internal quotations and citation omitted).  Here, the FAC similarly contains only naked assertions regarding likelihood of confusion.

Nevertheless, Eliya asserts that the FAC properly pleads likelihood of confusion by (1) specifically articulating what comprises the trade dress; and (2) by providing a side-by-side pictorial comparison of the shoes.  (Br. 43.)  Therefore, Eliya asserts, "the FAC succeeds in factually demonstrating a likelihood of confusion based on the same general overall impression being imparted."  (Br. 43.)  The district court rightly rejected this argument for three reasons.

*First*, since Eliya did not adequately define its trade dress (as discussed *supra*), the district court held that "those descriptions cannot form the basis for a claim that the parties' respective trade dresses are confusingly similar."  (R&R at A-1550.)  As for Eliya's other written allegations relevant to likelihood of confusion, the district court held that they "are akin to those found by the court in *Carson Optical* to be 'naked assertions devoid of factual enhancement.'"  (R&R at A-1549 (quoting *Carson Optical*, 11 F. Supp. 3d at 346 (citation omitted).)  The district court cited Paragraphs 22[9] and 31[10] of the FAC as examples of such naked

_____

[9] Paragraph 22 alleges, in relevant part: "Defendants' use of such features on its products is likely to cause confusion in the marketplace as to the source of such goods.  Defendants' infringement [*sic*] shoes are sold in the competitive proximity of the Lulia Shoe, the Comfi Shoe and the Catwalk Shoe;  upon information and belief, there have been occurrences of actual confusion as to the source and

assertions.  (*Id.* at A-1549-1550.)  The district court further noted that a written description of the Madden shoes or their resemblance to the Eliya shoes was "conspicuously absent."  (SPA-7.)

In lieu of written allegations, Eliya relies heavily on photographs comparing the products.  (FAC ¶ 28, A-1317-1318.)  However, the district court recognized that even if photographs are used to show likelihood of confusion, Eliya was still required to point out the claimed distinctive elements of the trade dress, which Eliya failed to do.  (R&R at A-1550-51); *see also Montblanc-Simplo GmbH v. Colibri Corp*, 692 F. Supp. 2d 245, 254-55 (E.D.N.Y. 2010) (finding that "visual depictions" of alleged trade dress are insufficient because "[a] plaintiff claiming trade dress infringement as to a line of products must make efforts to fairly put the defendant on notice of the distinctive elements and features of the trade dress").

***Second*,** In addition, while admitting that the test for confusion is not simply a side-by-side comparison test, Eliya asserts that a side-by-side comparison is useful to determine if the products at issue create the same general overall impression such that consumers would be confused.  (Br. 28.)  The district court

---

sponsorship between the Lulia Shoe, the Comfi Shoe , and the Catwalk Shoe and Defendants' infringement [*sic*] shoes."  (FAC ¶ 22, A-1315-1316.)

[10] Paragraph 31 alleges: "Defendants is [*sic*] using Eliya's trade dress in the Lulia Shoe, the Comfi Shoe, and the Catwalk Shoe such that there is a likelihood of confusion between the knock-off shoes Defendants sell and the Lulia Shoe, the Comfi Shoe, and the Catwalk Shoe."  (FAC ¶ 31, A-1319.)

28

also rejected this argument. (R&R at 1550-51; SPA-7-8.) It held that even if it were to rely only on the photographs alone, they would be insufficient because "the claimed features are not self-evident even from careful review of these photographic depictions." (R&R at A-1551 (quoting *Kohl's*, 2016 U.S. Dist. LEXIS 22085, at *5).)

***Finally***, considering the photographic comparisons alone, the district court rightfully concluded that the Madden shoes are not similar enough to any of the Eliya shoes such that a consumer would confuse them. (R&R at A-1551.) Indeed, the district court stated that Eliya "relies upon photographs which frankly, 'to the Court's eye,' fail to support a likelihood of confusion." (SPA-7.)

The cases cited by Eliya do not support its argument that it has adequately pleaded likelihood of confusion. (Br. 41-43.) As an initial matter, most of Eliya's cases predate the Supreme Court's decisions in *Twombly* and *Iqbal*, *supra*, which set forth current pleading standards. *See, e.g., Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998) (cited in Br. 41-43).

In other instances, Eliya misstates the courts' holdings to support its arguments. For example, the cases cited by Eliya to support its argument that visual depictions of trade dress are sufficient to satisfy pleading requirements for likelihood of confusion are inapposite. (*See* Br. 42-44.) In *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219 (S.D.N.Y. 2008) (cited in Br. 42), the court

29

ruled on a motion to dismiss the defendant's counterclaims. In rendering its decision, the court not only considered visual depictions of the logos at issue, but also the plaintiff's own statement that the parties' marks could not co-exist in the marketplace. *Id.* at 226-27. Thus, the denial of the motion to dismiss the counterclaims was as a result of plaintiff's own admission.

In *Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561 (E.D.N.Y. 1999) (cited in Br. 42), the court granted defendant's ***summary judgment*** motion concluding that the overall images of the packaging were so different that it was highly unlikely that any individual similarities they shared would cause confusion among an appreciable number of purchasers. That case has nothing to do with the standard of pleading for a motion to dismiss.

Eliya's citation to the *Montblanc* case for the proposition that "a Lanham Act plaintiff may rely on visual depictions of trade dress" (Br. 43) is particularly misleading. The passage actually states as follows:

> Although a Lanham Act plaintiff may rely on visual depictions of the trade dress or broader descriptions where the product line (such as a line of jewelry or accessories) "involves a higher degree of decorative or artistic elements," ***the plaintiff must nevertheless "point [] to the distinctive elements"*** that cut across the product] line.

*Montblanc-Simplo GMBH*, 692 F. Supp. 2d at 255 (emphasis added) (alteration in original). Thus, photographs alone are not sufficient to state a claim.

30

Finally, Eliya cites *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004 (2d Cir. 1997) to support its conclusion that it has adequately pleaded likelihood of confusion. (Br. 44.) However, that case merely repeats the well-established legal principle that the test of infringement is not whether the consumer will know the difference between the parties' respective marks or trade dress if the consumer sees them side by side, but rather whether a consumer who is presented with plaintiff's mark or trade dress at one point in time will later, upon seeing defendant's mark or trade dress, think they are the same. *Id.* This general principle, while true, in no way negates the fact that Eliya's conclusory allegations of a likelihood of confusion are factually insufficient to withstand a motion to dismiss.

As stated by the district court, the FAC "fails to plead facts that plausibly show a likelihood of confusion." (R&R at A-1551; SPA-8.) Based on the foregoing, it is clear that the dismissal of the FAC on the third alternative ground is well supported in law and fact.

## III. Eliya's Failure and Inability to Plead Protectable Trade Dress Also Supports Dismissal of Derivative State Claims

The district court properly dismissed Eliya's federal claim for trade dress infringement in Count I of the FAC. (R&R at A-1544, 1548, 1551; SPA-6-8.) Since Eliya has not, and cannot, allege a valid claim for trade dress infringement, Eliya's derivative claims are not viable. *See, e.g., Bubble Genius LLC*, 239 F.

31

Supp. 3d at 603-04 ("[B]ecause plaintiff's statutory state law unfair competition claim is based solely on defendant's alleged copying of its design, it is preempted by federal law.").  As a result, the district court declined to exercise supplemental jurisdiction over Eliya's derivative state law claims (Counts II and III for unfair competition and trade dress dilution, respectively).  (R&R at A-1551-1552.)

Furthermore, as the district court recognized, it did not have jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332 because the parties are not diverse.  As plead in the FAC (¶¶ 1-2, A-1303), "Eliya is a corporation duly organized under the laws of New York;" and Madden has "a principal place of business at 5216 Barnett Ave. Long Island City, NY 11104."  Thus, they are both citizens of New York and not subject to diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

In the absence of any protectable trade dress, the district court's decision not to exercise supplemental jurisdiction over the state law claims and the dismissal of all such claims was proper.

32

## <u>CONCLUSION</u>

Pursuant to the foregoing reasons and authorities, Madden submits that the

district court's judgment dismissing Eliya's FAC should be affirmed in all

respects.

New York, NY                           Respectfully submitted,
July 5, 2018

_/s/Douglas A. Miro_____
Douglas A. Miro
dmiro@arelaw.com
AMSTER ROTHSTEIN & EBENSTEIN, LLP
90 Park Avenue
New York, NY  10016
Tel: 212-336-8000
Fax: 212-336-8001

*Attorneys for Defendant-Appellee*
*Steven Madden, Ltd.*

33

## CERTIFICATE OF COMPLIANCE
## <u>WITH TYPE-VOLUME LIMITATION</u>

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B).  According to the word processing system used

to prepare this document, the brief contains 6,806 words.

*/s/Douglas A. Miro*
Douglas A. Miro

679956.4